IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>       Plaintiff,<br><br>v.<br>6.48 ACRES OF LAND, et al.,<br>6.96 ACRES OF LAND, et al.,<br>42.24 ACRES OF LAND, et al.,<br><br>       Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Civil No. 2:06cv00983 DB<br>and consolidated cases<br>Civil Nos. 2:06c00984-985 DB<br><br>Judge Dee Benson |

.    .

The United States moves pursuant to Federal Rule of Evidence 702 to exclude the testimony of two of the Defendant Landowners' (Landowners) experts.  On November 30, 2005, the United States took a total of 55.68 acres of the Landowners' property for a federal project known as the Provo River Restoration Project.  The Government offered compensation on the land consistent with its zoning designation at the time of the taking, which required a minimum of twenty acres for each single residence.  The Landowners assert that they should be compensated as though the land were zoned for "Resort Recreational," which their experts, Mr. Francis Smith and Mr. Richard T. Perkins, regard as the highest and best use of the land.  For the following reasons, the Government's motion is granted.

### I. Factual Background

All of the land at issue is east of the Provo River in Wasatch County, Utah, in an area known as the "North Fields," just east of Midway City and a few miles west of Heber City.  Smith Dep. 41: 17-19; Perkins Ex. 2, at 58.   For decades prior to 2005, the property was zoned to require a minimum of twenty-acres for each residence; in 2002, a parcel of the property was

zoned "Public Facilities," in anticipation that the land would be acquired by the United States. Smith Dep. 41:14-16; 40:21-41:16.

The Landowners retained Mr. Francis Smith, a civil engineer, "to provide consulting engineering services with respect to: determination of highest use of the land in question; a determination of engineering feasibility of developing the property in accordance with the highest use both before and after the taking..." Smith Ex. 2 at 2.  Mr. Smith acknowledged that "Resort Recreational" zoning approval could take one to two years based on his experience with two other large properties in Wasatch County, and possibly three years based on another large project. Smith Dep. 34:10-19; 48:8-12.  Despite the likely delays in zoning, Mr. Smith "*felt* [that] the highest land use is for Resort Recreational." Smith Dep. Ex. 2 at 5. (emphasis added).  In fact, Mr. Smith claims that it is "*reasonably probable* that a major development request to either Wasatch County or Midway City *could have been made* prior to November 30, 2005."  *Id.* (emphasis added).  Mr. Smith does not provide evidence that a zoning change would be possible in the first place, he only speculates that a zoning change could occur because of other properties that were similarly re-zoned in the past.

Mr. Richard Perkins was also retained by Landowners on November 30, 2005, to prepare an appraisal of the subject property.  Mr. Perkins consulted with Mr. Smith regarding the highest use for the land, and arrived at the same conclusion as Mr. Smith, that the highest and best use for the subject property is "Resort Recreational," and could include "single family homes, condominiums and supporting recreational facilities."  Perkins Ex. 2 at 32; Ex. 2 at 33.  Mr. Perkins conceded that potential uses are limited due to the A-20 zoning, but because the Wasatch County Council had approved Resort Specific Project Area (RSPA) designations in other

developments prior to November 30, 2005, Mr. Perkins concluded the subject property could also have been designated RSPA.  Perkins Ex. 2 at 32. Perkins Dep. 66:20-67:19.  Mr. Perkins based his re-zoning opinion on the fact that other RSPA designations had been approved in the past.

Al Mickelson serves as the Director of the Wasatch County Planning Office and has worked in city planning for more than 30 years.  Dec. Mickelson at 1.  During a 2006 meeting, Mr. Smith discussed with Mr. Mickelson some preliminary plans to develop the subject property and inquired about the likelihood of changing the zoning to "Resort Recreational."  Dec. Mickelson at 4.  Though Mr. Smith did not officially submit the development plans, based on Mr. Mickelson's review of them he informed Mr. Smith that they were contrary to the councils' plans for the area; Mr. Mickelson also informed Mr. Smith that in his official capacity, his recommendation to the Wasatch County Planning Commission and Wasatch County Council would be to disapprove the zoning change Mr. Smith had mentioned.  Dec. Mickelson at 5.  Mr. Mickelson further opined there was a "very poor likelihood that zoning on the subject property would be changed." Dec. Mickelson at 5.  Mr. Mickelson's statements were based on the fact that in his "extensive interactions ... Planning Commission and Council members have manifested a desire to maintain Agricultural 20-acre zoning in the area in which the subject property is situated.  For this reason the Wasatch County Council has limited RSPA designations to areas above the Jordanelle Dam."  Dec. Mickelson at 6.  The property at issue is located below the Jordanelle Dam, which "virtually precludes the subject property being designated RSPA." *Id*.

## II. Analysis

The Government assessed the value of the property as it was zoned on November 30, 2005, but the Landowners want to be compensated instead for what Messrs. Smith and Perkins concluded *could* be the highest and best use of the land.  In a condemnation case, the general rule is that just compensation should be measured by the market value of the property taken.  *United States of America v. 45,131.44 Acres of Land*, 483 F.2d 569, 572-73 (10th Cir. 1973); *See also United States v. Martin*, 267 F.2d. 764, 771 (10th Cir. 1959).  Mr.  Perkins' estimation, on the other hand, is based on recent RSPA designations for Deer Valley Lakeside Resort and Victory Ranch, and he assumed that it was *"reasonably  probable"* that a plan to re-zone and build would be approved for the subject property as well.  Perkins Ex. 2 at 32; Perkins Dep. 66:20-67:19 (emphasis added).

When assessing the market value of land, "comparability is a question of fact, and the court has broad discretion in determining the admissibility of evidence of comparable sales." *45,131.44 Acres of Land*, 483 F.2d at 571.  The only RSPA zoned properties used for comparisons by Messrs. Smith and Perkins in order to bolster their claim that the land at issue was likely to be subject to a similar zoning change by or at November 30, 2005, were two properties, Victory Ranch and Deer Valley Lakeside Resort.  Mr. Perkins conceded in his report that "few sales were found" in the area that were comparable to the land at issue.  Dep. Smith Ex.3 at 4; Perkins., Ex. 2 at 32.  The two properties that were found do not bear resemblance to the land at issue.  Victory Ranch and Deer Valley Lakeside Resort are located above the

4

Jordanelle Dam, whereas the property at issue is located below the Dam; a dispositive difference according to Mr. Mickelsen.  Dec. Al Mickelsen at 6.  Moreover, the sizes of the Victory Ranch and Deer Valley Lakeside Resort developments are much larger in acreage than the approximately 80 acres at issue, (3,433 acres and 6,370 acres respectively).  Finally, Victory Ranch and Deer Valley Lakeside Resort clearly meet RSPA requirements whereas the property at issue does not.  The Wasatch County Code requires RSPA applicants to satisfy certain threshold requirements:

> (c)The property must incorporate mixed uses including at least six (6) of the following: condominiums, hotels, timeshares or other shared-ownership products, private residence clubs, town homes, single-family homes, retail shops, recreational facilities, restaurants, and resort related commercial enterprise.  The intention of this provision is that each project shall have a commercial component.

Wasatch County Code § 16.15.07 Resort Specially Planned Area (RSPA).

 The reports of Messrs. Smith and Perkins cite only one use for the property, 10-18 single-family lots at 5-7 acres each, with no commercial component as required for RSPA zoning.  Perkins Dep. 57:7-22.

The failure of the reports to take into account the Wasatch county RSPA regulations casts doubt not only on the likelihood that the property could have been re-zoned, but on the expertise of the Landowners' purported experts as well.  By not taking into account essential requirements for the particular zoning, Messrs. Smith and Perkins failed to employ "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Moreover, the Landowners' experts ignored the evidence they did have regarding the likelihood of a zoning change.

By conducting such a limited investigation regarding the proposed RSPA zoning change

for the property Messrs. Smith and Perkins ignored basic principals of property valuation.  The

brief interaction with Mr. Mickelson would not have sufficed even if he had responded favorably

to the plans.  The reports should include some evidence that higher density zoning is reasonably

foreseeable based on the opinions of decision makers in that field.

The U.S. Supreme Court, in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* gave trial

judges the "task of ensuring that an expert's testimony both rests on a reliable foundation and is

relevant to the task at hand."  509 U.S. 579, 597.  Federal Rule of Evidence 702 requires that

> If scientific, technical or other specialized knowledge will assist the trier or fact to
> understand the evidence or to determine a fact in issue, a witness qualified as an expert
> by knowledge, skill, experience, training, or education, may testify thereto in the form of
> an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) *the
> testimony is the product of reliable principles and methods*, and (3) the witness has
> applied the principles and methods reliably to the facts of the case.

(emphasis added).

"Reliability in a particular case is a matter that the law grants the trial judge broad

latitude to determine."  *Kumho*, 526 U.S. at 152-3.  Since their methods are unreliable, the

testimony of Messrs. Smith and Perkins is inadmissable at trial.  The court finds that the

Landowners' experts failed to take into account county zoning regulations, the opinion of the

longtime director of the county planning office, and also the significant differences in the

properties used to compare to the land at issue.

Messrs. Smith and Perkins failed to demonstrate any real probability that the land at issue

would be re-zoned to Resort Recreational.  The Landowners had never submitted requests to re-

zone the subject property prior to November 30, 2005, but still Messrs. Smith and Perkins came

to the assumption that re-zoning was reasonably likely to occur. Smith Ex. 2 at 5; Perkins Dep.

66:20-67:1.  "The judge has a responsibility to prevent the jury from indulging in baseless

speculation about future changes in zoning." *H&R Corp v. District of Columbia*, 351 F.2d 740, 742 (D.C. Cir. 1965).  Messrs. Smith and Perkins' expert testimony is precisely the sort of wishful thinking that should be kept from the jury.

Moreover, Messrs. Smith and Perkins ignored canonical principles of property valuation, which renders their testimony of the land value unreliable and inadmissible pursuant to Federal Rule of Evidence 702.

### III. Conclusion

Based on the foregoing and pursuant to Federal Rule of Evidence 702 and relevant case law, and for the reasons set forth in the Government's memoranda in support of its motion, the motion to exclude the testimony of Messrs. Smith and Perkins is GRANTED.

Dated this 31st day of July, 2007.

Dee Benson
United States District Court Judge